AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

FILED ENTERED
LODGED RECEIVED

# UNITED STATES DISTRICT COURT

DEC 18 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

for the

Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
FACEBOOK SUBJECT ACCOUNT as more fully
described in Attachments A

)
)
)
)
)
)

Case No.    MJ19 - 608

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
FACEBOOK SUBJECT ACCOUNT as more fully described in Attachments A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachments B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1159 & 371 | Misrepresentation of Indian Produced Goods and Products; and Conspiracy to commit offense or to defraud United States. |

The application is based on these facts:

✓  See Affidavits of Special Agent Sean W. Hyrons, continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or; ☑ telephonically recorded.

*Applicant's signature*

Sean W. Hyrons, Special Agent
*Printed name and title*

☑ The foregoing affidavit was sworn to before me and signed in my presence, or
☐ the above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  December 18, 2019

*Judge's signature*

City and state:  Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

USAO: 2019R01217

## **ATTACHMENT A**

### **DESCRIPTION OF LOCATION TO BE SEARCHED**

This warrant applies to information associated with the following Facebook accounts (SUBJECT ACCOUNT):

FACEBOOK ACCOUNTS
Display Name: Tony Rath
User Name: tony.rath984
User ID#:  100023472430742
Facebook URL: https://www.facebook.com/tony.rath.984
Display Name: Tony Rath
User Name: tony.rath98
User ID#:  100022635772284
Facebook URL: https://www.facebook.com/tony.rath.98
Display Name: Tony Rath
User Name: tony.rath9
User ID#:  100001911504680
Facebook URL: https://www.facebook.com/tony.rath.9
Dates: December 2, 2014 through the present.

As well as other subscriber and log records associated with the accounts, which are stored at premises owned, maintained, controlled, and operated by Facebook, Inc., an electronic communications service and remote computing services provider headquartered at 1601 Willow Road, Menlo Park, California, 94025.

Attachment A – Locations to be Searched
USAO No. 2019R01217 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**I.  INFORMATION TO BE DISCLOSED**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, Inc., including any communications, records, files, logs, posts, payment records, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to requests made under 18 U.S.C. § 2703(f), on or about December 2, 2019, Facebook is required to disclose the following information to the government for each account listed in Attachment A:

(a)     All contact information, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)     All Photoprints, including all photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(c)     All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; tags; and information about the user's access and use of Facebook applications;

(d)     All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

(e)     All IP logs, including all records of the IP addresses that logged into the account(s) and associated geolocation data;

(f)     All information about the user's access and use of Facebook Marketplace;

ATTACHMENT B - 1
USAO #2019R01217

(g)     The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit or bank account number);

(h)     All privacy settings and other account settings; and

(i)     (i) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II. INFORMATION TO BE SEIZED BY THE GOVERNMENT

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Section 1159, Misrepresentation of Indian produced goods and products, and conspiracy to commit these offenses, for the account or identifier listed on Attachment A, including information pertaining to the following matters:

(a)     Records that identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the same, including geolocation data associated with such use or access;

(b)     Records that identify associates of the account specified;

(c)     Records relating to birth, heritage, tribal affiliation or lineage of the account holder;

(d)     Records relating to the sale, offer or display for sale, production or shipment of account holder's artwork to persons known or as of yet unknown; and

(e)     Records (including messages, posts, notes, drafts, photographs, videos, or other documents) relating to the relationship between Lewis Anthony RATH aka Tony RATH and those known and unknown, who he sold or offered to sell too, as well as communications and posts between or amongst any of the same.

ATTACHMENT B - 2
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    This warrant authorizes a review of the electronically stored data,

2  communications, or other records and information seized, copied or disclosed pursuant to

3  this warrant in order to locate evidence, fruits, and instrumentalities described in this

4  warrant. The review of this electronic data may be conducted by any government

5  personnel assisting in the investigation, who may include, in addition to law enforcement

6  officers and agents, attorneys for the government, attorney support staff, and technical

7  experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized,

8  copied or disclosed electronic data to the custody and control of attorneys for the

9  government and their staff.

10  //

11  //

12  //

13  //

14  //

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 3
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
## RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury

under the laws of the United States of America pursuant to Title 28, United States Code,

Section 1746, that the information contained in this declaration is true and correct. I am

employed by Facebook, and my official title is _____. I am

a custodian of records for Facebook. I state that each of the records attached hereto is the

original record or a true duplicate of the original record in the custody of Facebook, and

that I am the custodian of the attached records consisting of _____

(pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business

activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the

Federal Rules of Evidence.

_____        _____
Date                           Signature

ATTACHMENT B - 4
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**AFFIDAVIT**

2

3      STATE OF WASHINGTON        )
                                   )        ss
4      COUNTY OF KING             )

5

6              I, Sean W. Hyrons, a Special Agent with the United States Department of Interior,

7      United States Fish and Wildlife Service, Office of Law Enforcement in Albuquerque,

8      New Mexico, being first duly sworn, hereby depose and state as follows:

9                          **AFFIANT BACKGROUND & INTRODUCTION**

10             1.      I am a Special Agent ("SA") with the United States Department of Interior,

11     United States Fish and Wildlife Service, Office of Law Enforcement ("USFWS") in

12     Albuquerque, New Mexico.  I am an "investigative or law enforcement officer" of the

13     United States within the meaning of Title 18, United States Code, Section 2510(7), that

14     is, an officer of the United States empowered by law to conduct investigations of, and to

15     make arrests for, offenses enumerated in Title 18 of the United States Code.

16             2.      I have worked for the USFWS as a SA since approximately November

17     2018.  Before transferring to USFWS, I worked as an SA for the Bureau of Land

18     Management, Office of Law Enforcement and Security since January 2012.  Prior to

19     working as an SA, I was a Bureau of Land Management Law Enforcement Ranger for

20     approximately three years, a United States Forest Service Law Enforcement Officer for

21     approximately eight years and a City of Orlando Police Officer for approximately two

22     years.  I have received and completed formal training that included a twelve-week

23     Criminal Investigator training program in Glynco, Georgia.  I have training and

24     experience in the investigation of crimes relating to the theft, fraud, trafficking, and

25     destruction of natural and cultural resources, with a special emphasis on Native American

26     items.  I have investigated violations of the Indian Arts and Crafts Act and have become

27     familiar with the tactics and techniques associated with Indian Arts and Craft fraudulent

28     activities.  Specifically, I have learned how fraudulent pieces of jewelry are manufactured

Affidavit of Special Agent Sean W. Hyrons – 1
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and then distributed throughout the United States and sold as authentic Native American

2   jewelry. I am familiar with the marketing methods used to deceive consumers. I am also

3   familiar with the Native American jewelry market and how it is valued and advertised as

4   made by a particular Native American artisan. I have personally been involved in

5   obtaining federal search and arrest warrants, and I have directed, coordinated, and

6   assisted other law enforcement officers in the executions of these warrants.

7          3.       The information in this affidavit is based on my personal participation in

8   this investigation and information provided to me by other agents, officers and witnesses;

9   and information gained through my training and experience. Because this affidavit is

10  being submitted for the limited purpose of establishing probable cause, I have not

11  included each and every fact known to me concerning this investigation. I have set forth

12  only those facts I believe are relevant to a fair determination of probable cause to support

13  the issuance of the requested warrant. Unless specifically indicated otherwise, all

14  conversations and statements described in this affidavit are related in substance and in

15  part only.

16                        **PURPOSE OF AFFIDAVIT**

17         4.       This affidavit is submitted in support of an application for a search warrant

18  under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A)

19  to require Facebook to disclose to the government records and other information in its

20  possession, pertaining to the subscriber or customer associated with the following

21  Facebook account:

22         a.       SUBJECT ACCOUNT: Facebook user IDs tony.rath984, tony.rath.98
                    and tony.rath.9 registered under the name Tony RATH, as more fully
23                  described in Attachment A. Stored at the premises controlled by
24                  Facebook, Inc., a social media platform headquartered at 1601 Willow
                    Road, Menlo Park, California 94025.
25

26  The information to be searched is described in the following paragraphs and in

27  Attachment B.

28

Affidavit of Special Agent Sean W. Hyrons – 2
USAO #2019R01217

5. I understand the contents of the SUBJECT ACCOUNT can only be obtained, in the Ninth Circuit, by means of a search warrant issued under authority of 18 U.S.C. § 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and Federal Rule of Criminal Procedure 41(e)(2)(b). On or about December 2, 2019, the USFWS made a preservation request to Facebook, requesting they preserve the content related to the SUBJECT ACCOUNT. This is the first application for a search warrant of the SUBJECT ACCOUNT in this investigation.

6. I make this request based on the evidence described below, which establishes probable cause to believe that the SUBJECT ACCOUNT has been used, and will continue to be used, to facilitate violations of the Indian Arts and Crafts Act, specifically misrepresentation of Indian produced goods and products, and conspiracy to commit these offenses and related offenses in the Western District of Washington, and elsewhere, in violation of the Indian Arts and Crafts Act, Title 18, United States Code, Section 1159, and conspiracy to commit these offenses in violation of Title 18, United States Code, Section 371, and that the information collected pursuant to the warrant will further the investigation of these violations.

## SUMMARY OF PROBABLE CAUSE

7. I have obtained the information set forth in this affidavit through my personal participation in the investigation described below, from oral and written reports of other law enforcement officers, from witnesses and informants cooperating with law enforcement, and from records, documents and other evidence obtained during this investigation.

8. Since this affidavit is intended to show only that there is a sufficient factual basis to support the application, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for a fair determination of probable cause to authorize the issuance of such warrant of SUBJECT ACCOUNT.

Affidavit of Special Agent Sean W. Hyrons – 3
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    9.    In the following paragraphs, I describe communications between various

2    individuals. Except where specifically indicated, the descriptions are summaries of the

3    conversations and are not intended to present a verbatim recitation of the words used by

4    the participants. When the affidavit provides verbatim recitations, I have not noted each

5    spelling and grammatical error, but have produced the written conversations as they

6    appeared.

7    10.    As detailed below, during the course of the investigation, agents[1]

8    communicated with Lewis Anthony RATH aka Tony RATH via Facebook Messenger.

9    During these conversations, RATH falsely claimed to be Apache,[2] agreed to produce

10   artwork and did sell his artwork to agents, therefore, did falsely suggest that his artwork

11   was Indian produced, an Indian product, and/or the product of a particular Indian or

12   member of a federally recognized Indian tribe.

13   11.    Based on the facts set forth in this affidavit, there is probable cause to

14   believe that the SUBJECT ACCOUNT, as described in Attachment A, will contain

15   evidence, fruits, and instrumentalities of misrepresentation of Indian produced goods and

16   products, and conspiracy to commit these offenses by Lewis Anthony RATH, aka Tony

17   RATH, and other known and unknown, in violation of 18, U.S.C. §§ 1159 and 371, as

18   described in Attachment B.

19   **A.    The Indian Arts and Crafts Act Criminalizes the Sale of Items Falsely**
20        **Sold as Native American Arts and Crafts**

21   12.    On August 27, 1935, Congress created the Indian Arts and Crafts Board to

22   improve the economic status of Native Americans through the development and

23   promotion of authentic Native American arts and craftwork.  See 25 U.S.C. §§ 1158-

24   1159. The 1935 Act adopted criminal penalties for selling items misrepresented as

25   Native American made.

26

27

28   _____

[1] When I use the term "agents" throughout the affidavit, I am referring to one or more United States Fish and Wildlife Service Special Agents.
[2] Federally recognized Apache Tribes are located in Arizona, New Mexico and Oklahoma.

Affidavit of Special Agent Sean W. Hyrons – 4
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.     This provision, which set fines not to exceed $500 or imprisonment not to exceed six months, or both, proved to be ineffective at stemming the flood of counterfeit Native American arts and craftwork in the market.  In response to growing sales of counterfeit Native American arts and crafts, Congress passed the Indian Arts and Crafts Act of 1990, P.L. 101-644.  The Indian Arts and Crafts Act is a truth-in-advertising law that prevents products falsely marketed as "Indian" or "Native American" when the products are not, in fact, made by Native Americans. It is illegal to offer or display for sale, or sell any art or craft product in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States.

14.     Under the Act, an Indian is defined as a member of any federally or officially, State recognized tribe of the United States, or an individual certified as an Indian artisan by an Indian tribe.  Subsequently, the Indian Arts and Crafts Amendments Act of 2010, P.L. 111-211, allowed the Indian Arts and Crafts Board to refer cases to any federal law enforcement officer for investigation.  In 2012, the Indian Arts and Crafts Board entered into an agreement with the USFWS to develop an investigative unit to pursue violations of Indian Arts and Crafts Act.

## **INVESTIGATION**

15.     In early July 2018, IACB personnel received a complaint about artist Lewis Anthony RATH ("RATH"), D.B.A. Tony "Two Crows" RATH and Tony RATH. The complainants, Lourene Melcher (RATH's ex-wife) and Adam Stence (Melcher's boyfriend), accused RATH of violating the Indian Arts and Craft Act by selling his artwork as Native American to various art galleries and the public.  The complainants stated that RATH is not Native American, but represents himself and his artwork as Native American and Apache.  According to the complainants, RATH sells his work to various galleries including Raven's Nest Treasure, Steinbrueck Native Gallery, Ye Olde Curiosity Shop and Hotel California Trading.

Affidavit of Special Agent Sean W. Hyrons – 5
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     On May 7, 2019, agents obtained an email thread between IACB personnel and the complainants.  The complainants' email contained some of the following statements:

- A family with the surname of Rath adopted RATH as a youth in Los Angeles, California; and that RATH's birth name was Lewis Anthony GONZALES.

- RATH falsely claims to have grown up on the Apache San Carlos Reservation and represents himself as Apache when selling his art. RATH has been falsely marketing his artwork as Native American in Arizona, Oregon, Washington, and Alaska.

- RATH uses Western Union to receive payment from his clients.

*RATH's Tribal Affiliation*

17.     Agents contacted the San Carlos Apache Tribal Enrollment Department to determine if RATH was an enrolled member or Indian Artisan.  According to an Enrollment Specialist, Lewis Anthony RATH, Lewis Anthony GONZALES and Tony "Two Crows" RATH are not enrolled members of the Tribe. The Tribal Enrollment Department also has no record of RATH or anyone else being a certified Indian Artisan with the San Carlos Tribe. Additionally, agents followed up with the Tribal Enrollment Department to determine if RATH's birth or adoptive parents were enrolled members. According to an Enrollment Specialist, RATH's birth and adoptive parents are not enrolled members of the Tribe.

*Open Source Internet Search on RATH*

18.     On May 30, 2019, agents conducted an open source internet search on RATH.  Agents found an ecommerce site and an Instagram site selling RATH's artwork. The ecommerce site advertised RATH's artwork as Native American, but the item had sold. The Instagram site, which appeared to have been created and controlled by RATH, listed RATH's artwork for sale that was hashtagged as Native American. Additionally, agents discovered an online article on turtletrack.org that referenced RATH.  The online article is titled "Canku Ota- A Newsletter Celebrating Native America."  The newsletter

Affidavit of Special Agent Sean W. Hyrons – 6
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  features a photo of RATH and a caption that states, "Native American carver Tony Rath

2  coaches Stevens Elementary fourth grader…"

3  *Facebook Accounts*

4      19.     In late June of 2019, agents spoke with the complainants via phone in

5  reference to Northwest Coast Native Carvers Facebook Public Group webpage and

6  RATH's Facebook accounts. The complainants stated that RATH frequently posted

7  pictures of his artwork on both sites and they believed that RATH used the Northwest

8  Coast Native Carvers Facebook Public Group webpage to sell his artwork. The

9  complainants also told agents that RATH had several Facebook accounts to include the

10 Facebook account tony.rath.984. Agents later discovered two additional Facebook

11 accounts for RATH under the Facebook accounts tony.rath.9 and tony.rath.98. All three

12 Facebook accounts had photographs of RATH[3] posted on the accounts.

13 *Interview of Lourene Melcher and Adam Stence*

14     20.     On June 24, 2019, agents met with and interviewed complainants Melcher

15 and Stence about RATH. During the meeting, they made the following statements and

16 provided agents with copies of some of the following documentation:

17    • A copy of RATH's California Birth Certificate.  The birth certificate was for a

18       Lewis Anthony Gonzales, which is RATH's birth name. A family with the

19       surname Rath later adopted RATH. The birth certificate indicated that RATH's

20       birth parents race was Caucasian. Agents later obtained Lewis Anthony RATH's

21       adopted California Birth Certificate. The following information in the adopted

22       California Birth Certificate was identical to the information found in Lewis

23       Anthony Gonzales' birth certificate: date of birth, time of birth, location of birth to

24       include hospital name and address, RATH's first and middle name and the

25       physician's name.

26

27

28

[3] Agents recognized the photographs posted on the Facebook accounts as RATH based on RATH's Washington driver's license photograph.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- RATH's adoptive father's death certificate.  The death certificate indicated that RATH's adoptive father was white.
- A proposal for a Totem Pole Project for the City of Gold Bar, Washington created by RATH. The first sentence in the proposal states, "Tony RATH is an Apache."
- The complainants stated that RATH had told them that he was Native American. RATH later admitted to the complainants that he was not Native American.
- The complainants stated that they had told RATH that it was illegal to represent his artwork as Native American and that RATH knew it was illegal to do so.

*Undercover Purchases of Artwork Attributed to RATH*

21.     On June 25, 2019, agents, in an undercover capacity, purchased a totem pole and necklace that were attributed to artist Tony RATH from Raven's Nest Treasure, which is located at 85 Pike Street, Suite B, Seattle, WA, 98101. Matthew Steinbrueck, the owner of Raven's Nest Treasure,[4] told agents that RATH was Native American. A female employee of Raven's Nest Treasure later provided agents written biographical information on RATH that states, "Tony Rath is San Carlos Apache."

22.     On June 25, 2019, agents, in an undercover capacity, purchased a mask and totem pole that was attributed to artist Tony RATH from Ye Olde Curiosity Shop, which is located at Pier 54, 1001 Alaskan Way, Seattle, WA, 98104.  An employee of Ye Olde Curiosity Shop stated that RATH was Apache. She also provided agents written biographical information that stated, "Tony Rath is an Apache Indian from the San Carlos Reservation in Arizona."

*Identification of RATH's Residence*

23.     On June 27, 2019, agents conducted surveillance at **2471 Blackbird Valley Lane, Maple Falls, Washington 98298**.  Agents recognized the house as the residence that RATH has posted pictures of on his Facebook page. Agents conducted a search on

---

[4] Washington Secretary of State Corporation Division's website identified Matthew Steinbrueck as the owner/governor of Raven's Nest Treasure/ Raven's Nest, Inc. located at 85 Pike Street, Suite B, Seattle, Washington, 98101.

Affidavit of Special Agent Sean W. Hyrons – 8
USAO #2019R01217

1   the Whatcom County Assessor and Treasure's webpage to determine the owner of **2471**

2   **Blackbird Valley Lane, Maple Falls, Washington 98298**. According to the Whatcom

3   Assessor and Treasurer, Lewis A RATH is the current owner of **2471 Blackbird Valley**

4   **Lane, Maple Falls, Washington 98298**.

5   *Facebook Accounts*

6        24.     Between June, 2019 and late November, 2019, Agents regularly visited

7   RATH's Facebook accounts and Northwest Coast Native Carvers Facebook Public Group

8   webpage. During these visits, agents observed numerous posts by RATH that included

9   photographs and videos of his artwork. Agents compared the photographs and videos of

10   RATH's artwork to photographs of RATH's residence posted on Zillow. It appears that

11   most of the photographs of RATH's artwork posted on his Facebook account,

12   tony.rath984, were taken at his residence, **2471 Blackbird Valley Lane, Maple Falls,**

13   **Washington 98298**.

14        25.     On October 17, 2019, agents conducted an internet search on Northwest

15   Coast Native Carvers Facebook Public Group webpage. During the search, agents

16   discovered the following message between RATH and other Facebook account holders.

17   The content of the conversation was related to RATH carving Pacific Northwest Native

18   American styled artwork. RATH stated that his teachers were coastal and then made the

19   following statement in reference to his tribal affiliation: "Coming from a different nation

20   (apache) I certainly understand what you mean." This post was listed as being three years

21   old.



Affidavit of Special Agent Sean W. Hyrons – 9
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

*Facebook Instant Messaging between RATH and Agents*

2

3        26.     On November 19, 2019 and November 21, 2019, agents communicated

with RATH via Facebook instant messaging in an attempt to purchase artwork directly

4

from him. During the instant messaging, RATH texted the following, "…I am Apache

5

from San Carlos Arizona."

6



7

8

9

10

11

12

13        27.     Agents later commissioned RATH to create two totem poles for them for

14

$1,200.00. On November 25, 2019, agents paid RATH $1,200.00 via Walmart2Walmart

15

MoneyGram for the totem poles. Agents also communicated with RATH via Facebook

16

instant messaging to confirm receipt of the $1,200.00 and the details associated with the

17

MoneyGram. RATH later instant messaged the agents letting them know he received the

18

MoneyGram.

19                      **FACEBOOK INFORMATION STORAGE**

20        28.     I am aware from my experience and training, and consultation with other

21

investigators, of the following information about Facebook:

22        29.     Facebook, Inc. owns and operates the free-access social networking website

23

Facebook.com, accessed at http://www.facebook.com. Facebook allows its subscribers to

24

establish personal accounts. Subscribers can then use their accounts to share written

25

news, communications, photographs, videos, and other information with other Facebook

26

users, and sometimes with the general public; to purchase and sell things, play games,

27

and engage in numerous additional computer based activities.

28

Affidavit of Special Agent Sean W. Hyrons – 10
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

30.     A Facebook subscriber typically creates a personal profile using photos of him/herself and a name or nickname their friends and family know. This permits friends and family to find the subscriber's account. Facebook asks subscribers to provide basic contact information. This may include the subscriber's full name, birth date, contact e-mail addresses, physical address (city, state, zip code, country), telephone numbers, screen names, associated websites, and other personal identifiers. Subscribers can list credit, debit or other financial account numbers for use when making purchases on or through Facebook. Facebook also asks subscribers to create an account password. The password, known only to the subscriber (and anyone to whom he/she gives it) limits access to the account. Only someone logged in with the password can change profile details, profile photographs or privacy settings.[5] Only a person who has logged into the account with a password can post on the "Wall,"[6] send messages (similar to text messaging), or send friend requests under the identity of the account owner. It is my understanding that Facebook subscribers rarely share the password to their accounts. There is little purpose in sharing passwords, because anyone whom the account owner permits can post messages on the user's "Wall."

31.     I know from speaking with other law enforcement that "cookies" are small files placed by a server (such as those used by Facebook) on a device to track the user and potentially verify a user's authentication status across multiple sites or webpages. This cookie could be unique to a particular account (e.g., the Facebook account) or to a given device (e.g., the particular phone used to access the Facebook account). The next time a user visits a particular site or server, the server will ask for certain cookies to see if the server has interacted with that user before. Cookies can also be used to determine "machine cookie overlap," or multiple accounts that have been accessed by the same

---

[5] Subscribers must also be logged into their accounts to make purchases, post ads, make comments, adjust notifications they receive and to change other aspects of their accounts.
[6] A "Wall" in a particular subscriber's Facebook page is a space where the subscriber and his or her "Friends" (if permitted by the subscriber) can post and respond to status updates, check-ins, messages, images, attachments, and links.

Affidavit of Special Agent Sean W. Hyrons – 11
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    individual machine (e.g., two Facebook accounts that have been accessed on the same
2    phone). The machine cookie overlap thus allows Facebook to track accounts that are
3    "linked" to each other because the same user account (username on a computer) on the
4    same device accessed multiple Facebook accounts. This can identify either multiple
5    Facebook accounts used by the same person or used by different people sharing the same
6    user account and device. In either case, the machine cookie overlap means that the users
7    of the linked accounts are the same person or two people in close proximity to each other
8    (by virtue of them using the same device).

9        32.     Facebook users may join one or more groups or networks to connect and
10    interact with other users who are members of the same group or network. Facebook
11    assigns a group identification number to each group. A Facebook user can also connect
12    directly with individual Facebook users by sending each user a "Friend Request." If the
13    recipient of a "Friend Request" accepts the request, then the two users will become
14    "Friends" for purposes of Facebook and can exchange communications or view
15    information about each other. Each Facebook user's account includes a list of that user's
16    "Friends" and a "News Feed," which highlights information about the user's "Friends,"
17    such as profile changes, upcoming events, and birthdays.

18        33.     Facebook users can select different levels of privacy for the
19    communications and information associated with their Facebook accounts. By adjusting
20    these privacy settings, a Facebook user can make information available only to himself or
21    herself, to particular Facebook users, or to anyone with access to the Internet, including
22    people who are not Facebook users. A Facebook user can also create "lists" of Facebook
23    friends to facilitate the application of these privacy settings. Facebook accounts also
24    include other account settings that users can adjust to control, for example, the types of
25    notifications they receive from Facebook.

26        34.     Facebook users can create profiles that include photographs, lists of
27    personal interests, and other information. Facebook users can also post "status" updates
28    about their whereabouts and actions, as well as links to videos, photographs, articles, and

Affidavit of Special Agent Sean W. Hyrons – 12
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   other items available elsewhere on the Internet. Facebook users can also post information

2   about upcoming "events," such as social occasions, by listing the event's time, location,

3   host, and guest list. In addition, Facebook users can "check in" to particular locations or

4   add their geographic locations to their Facebook posts, thereby revealing their geographic

5   locations at particular dates and times. A particular user's profile page also includes a

6   "Wall," which is a space where the user and his or her "Friends" can post messages,

7   attachments, and links that will typically be visible to anyone who can view the user's

8   profile.

9          35.    Facebook allows users to upload photos and videos. It also provides users

10   the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is

11   tagged in a photo or video, he or she receives a notification of the tag and a link to see the

12   photo or video. For Facebook's purposes, the photos and videos associated with a user's

13   account will include all photos and videos uploaded by that user that have not been

14   deleted, as well as all photos and videos uploaded by any user that have that user tagged

15   in them.

16          36.    Facebook users can exchange private messages on Facebook with other

17   users. These messages, which are similar to e-mail messages, are sent to the recipient's

18   "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well

19   as other information. Facebook users can also post comments on the Facebook profiles of

20   other users or on their own profiles; such comments are typically associated with a

21   specific posting or item on the profile. In addition, Facebook has a Chat feature that

22   allows users to send and receive instant messages through Facebook. These chat

23   communications are stored in the chat history for the account. Facebook also has a Video

24   Calling feature, and although Facebook does not record the calls themselves, it does keep

25   records of the date of each call.

26          37.    If a Facebook user does not want to interact with another user on Facebook,

27   the first user can "block" the second user from seeing his or her account.

28

Affidavit of Special Agent Sean W. Hyrons – 13
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

38.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

39.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

40.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

41.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

42.     Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

43.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

Affidavit of Special Agent Sean W. Hyrons – 14
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   numbers; future and past event postings; rejected "Friend" requests; comments; gifts;

2   pokes; tags; and information about the user's access and use of Facebook applications.

3        44.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP

4   address. These logs may contain information about the actions taken by the user ID or IP

5   address on Facebook, including information about the type of action, the date and time of

6   the action, and the user ID and IP address associated with the action. For example, if a

7   user views a Facebook profile, that user's IP log would reflect the fact that the user

8   viewed the profile, and would show when and from what IP address the user did so.

9        45.    Social networking providers like Facebook typically retain additional

10   information about their users' accounts, such as information about the length of service

11   (including start date), the types of service utilized, and the means and source of any

12   payments associated with the service (including any credit card or bank account number).

13   In some cases, Facebook users may communicate directly with Facebook about issues

14   relating to their accounts, such as technical problems, billing inquiries, or complaints

15   from other users. Social networking providers like Facebook typically retain records

16   about such communications, including records of contacts between the user and the

17   provider's support services, as well as records of any actions taken by the provider or

18   user as a result of the communications.

19        46.    Therefore, the computers of Facebook are likely to contain all the material

20   described above, including stored electronic communications and information concerning

21   subscribers and their use of Facebook, such as account access information, transaction

22   information, and other account information. I believe such information is likely to

23   constitute evidence of misrepresentation of Indian produced goods and products currently

24   under investigation.

25   **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

26        47.    I anticipate executing this warrant under the Electronic Communications

27   Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A)

28   and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

Affidavit of Special Agent Sean W. Hyrons – 15
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  government copies of the records and other information (including the content of

2  communications) particularly described in Section I of Attachment B. Upon receipt of the

3  information described in Section I of Attachment B, government-authorized persons will

4  review that information to locate the items described in Section II of Attachment B.

5    48.    Analyzing the data contained in the forensic image may require special

6  technical skills, equipment, and software. It could also be very time-consuming.

7  Searching by keywords, for example, can yield thousands of "hits," each of which must

8  then be reviewed in context by the examiner to determine whether the data is within the

9  scope of the warrant. Merely finding a relevant "hit" does not end the review process.

10  Keywords used originally need to be modified continuously, based on interim results.

11  Certain file formats, moreover, do not lend themselves to keyword searches, as keywords,

12  search text, and many common e-mail, database and spreadsheet applications do not store

13  data as searchable text. The data may be saved, instead, in proprietary non-text format.

14  And, as the volume of storage allotted by service providers increases, the time it takes to

15  properly analyze recovered data increases, as well.  Consistent with the foregoing,

16  searching the recovered data for the information subject to seizure pursuant to this

17  warrant may require a range of data analysis techniques and may take weeks or even

18  months. All forensic analysis of the data will employ only those search protocols and

19  methodologies reasonably designed to identify and seize the items identified in Section II

20  of Attachment B to the warrant.

21    49.    Based on my experience and training, and the experience and training of

22  other agents with whom I have communicated, it is necessary to review and seize a

23  variety of messenger communications, chat logs, files, payment records and documents,

24  that identify any users of the SUBJECT ACCOUNT and communications sent or

25  received in temporal proximity to incriminating messages that provide context to the

26  incriminating communications.

27    **PROTOCOL FOR SORTING SEIZABLE**

28    **ELECTRONICALLY STORED INFORMATION**

Affidavit of Special Agent Sean W. Hyrons – 16
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

50.    In order to insure agents are limited in their search only to the contents of the SUBJECT ACCOUNT and any attachments, stored instant messages, stored voice messages, documents, and photographs associated therewith; in order to protect the privacy interests of other third parties who have accounts at Facebook; and in order to minimize disruptions to normal business operations of Facebook; this application seeks authorization to permit agents and employees of Facebook to assist in the execution of the warrant, pursuant to 18 U.S.C. § 2703(g), as follows:

a.    The search warrant will be presented to Facebook, with direction that it identify and isolate the SUBJECT ACCOUNT and associated records described in Section I of Attachment B.

b.    Facebook will also be directed to create an exact duplicate in electronic form of the SUBJECT ACCOUNT and associated records specified in Section I of Attachment B, including an exact duplicate of the content including all messages stored in the SUBJECT ACCOUNT.

c.    Facebook shall then provide an exact digital copy of the contents of the SUBJECT ACCOUNT, as well as all other records associated with the account, to me, or to any other agent of the FBI. Once the digital copy has been received from Facebook, that copy will, in turn, be forensically imaged and only that image will be reviewed and analyzed to identify communications and other data subject to seizure pursuant to Section II of Attachment B. The original digital copy will be sealed and maintained to establish authenticity, if necessary.

d.    I, and/or other government personnel assisting in the investigation, will thereafter review the forensic image, and identify from among the content those items which come within the items identified in Section II to Attachment B, for seizure. Items identified for seizure will then be copied to separate media for future use in investigation and prosecution.

Affidavit of Special Agent Sean W. Hyrons – 17
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        e.     All forensic analysis of the image data will employ only those search

2    protocols and methodologies reasonably designed to identify and seize the items

3    identified in Section II of Attachment B to the warrant.

4        51.    This warrant authorizes a review of the electronically stored data,

5    communications, or other records and information seized, copied or disclosed pursuant to

6    this warrant in order to locate evidence, fruits, and instrumentalities described in this

7    warrant. The review of this electronic data may be conducted by any government

8    personnel assisting in the investigation, who may include, in addition to law enforcement

9    officers and agents, attorneys for the government, attorney support staff, and technical

10    experts. Pursuant to this warrant, the USFWS may deliver a complete copy of the seized,

11    copied or disclosed electronic data to the custody and control of attorneys for the

12    government and their staff.

13           **KNOWLEDGE BASED ON TRAINING AND EXPERIENCE**

14        52.    Based upon my training and experience, as well as the knowledge and

15    experience of other agents and law enforcement officers in my office, I know the

16    following:

17            a.  Native American jewelry counterfeiters and artists store their

18                inventory and related materials in their residences.  This

19                includes, but is not limited to:

20              i.  The prohibited items themselves including but not limited

21                to jewelry and art making equipment/supplies/tools, wood,

22                gems, raw material and minerals to include ivory, bone,

23                mother of pearl, abalone shell, wood, turquoise, copper,

24                brass, silver, and gold, grinders, polishers, epoxy,

25                signature stamps/punches, hallmarking tools, wax molds,

26                etc.;

27              ii.  items related to the packaging, processing, storage,

28                shipping and transportation of the prohibited items;

Affidavit of Special Agent Sean W. Hyrons – 18
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

iii. books, records, receipts, notes, ledgers, correspondence and other records relating to the distribution of the prohibited items;

iv. personal notes/ledgers and records reflecting names, addresses, telephone numbers and other contact or identification data relating to the distribution of the prohibited items;

v. records relating to income and expenditures of money related to the sale and transfer of prohibited items, for example, money orders, wire transfers, cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers; and

vi. documents indicating travel in interstate and foreign commerce such as travel itineraries, motel and hotel receipts, credit card receipts, and telephone bills.

b. Further, it is generally a common practice for counterfeiters to maintain in their residences records relating to their fraudulent activities. Because counterfeit items derive value from purported authenticity, in many instances counterfeiters will maintain records to duplicate authenticity. It is common practice for a counterfeiter to keep transactional records to show sale and transfer of items. Additionally, counterfeiters must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their business.

c. It is also a generally common practice for counterfeiters to maintain records of wire transfers, cashier checks, and money orders related to the sale and transfer of prohibited items.

Affidavit of Special Agent Sean W. Hyrons – 19
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1                Evidence of such financial transactions and records relating to

2                income and expenditures of money and wealth in connection

3                with the sales of the fraudulent items would also typically be

4                maintained in residences.

5          d.   I know that handmade Native American artwork is

6                manufactured by use of various techniques, to include cutting,

7                buffing, grinding, carving tools, polishing and stone

8                placement with the use of turquoise, silver, coral, ivory, bone,

9                wood and lapis.  Other equipment—such as hallmarking

10               tools, grinders, buffing instruments, chemicals, solvents and

11               adhesives, and the like is typically used in this production

12               process.  Once the artwork and jewelry has been produced, a

13               usual practice is to package the artwork and jewelry in

14               individual sealed cellophane or plastics bags, and then place

15               those bagged items in sequentially larger bags or boxes for

16               transportation.

17          e.   Those involved in the production of Native American

18               counterfeit art and jewelry often communicate by telephone

19               or other electronic means in connection with their illegal

20               activities in order to set up meetings with coconspirators,

21               conduct sales of prohibited items, or to arrange for the

22               transportation of prohibited items or prohibited items

23               proceeds.

24                               **CONCLUSION**

25      53.     Based on the foregoing, I believe there is probable cause that evidence,

26 fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1159

27 and 371 will be found in the SUBJECT ACCOUNT, as more fully described in

28 Attachment A to this affidavit. I therefore request that the court issue a warrant

Affidavit of Special Agent Sean W. Hyrons – 20
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  authorizing a search of the SUBJECT ACCOUNT for the information set forth in section

2  I of Attachment B of this affidavit, and the seizure of the content more fully described in

3  Section II of Attachment B hereto, incorporated herein by reference of any such items

4  found therein.

5

6  SEAN W. HYRONS, Special Agent
   U.S. Fish and Wildlife Service

7

8  SUBSCRIBED AND SWORN to before me this 18 day of December, 2019.

9

10

11

12  MICHELLE L. PETERSON
    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Affidavit of Special Agent Sean W. Hyrons – 21
USAO #2019R01217

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970